Good morning, and may it please the Court. Amanda Elbogain on behalf of Appellant Timothy Whiting. With the Court's permission, I would like to reserve three minutes for rebuttal. The Appellant's first amended complaint, filed pro se, establishes a clear and disturbing pattern of unlawful conduct by the Cathedral City Police Department. The District Court made two crucial errors in dismissing the complaint with prejudice. First, it applied the wrong standard to Appellant's first amendment retaliation claim, finding that because the Appellant discovered the fabricated records in 2012, his speech could not have been chilled in 2008. But the standard is objective, not subjective. Maybe expedite matters by suggesting that, assuming you're right about that and other things, it seems to me you have a very difficult statute of limitations problem. Not, I mean, the District Court said otherwise, but that is my main concern. Right. And I will note on the District Court point, while this Court's standard of review is de novo on a dismissal, this Court has held that because a question of when a claim accrues is a fact-intensive inquiry, the District Court's finding on when the claim accrues is entitled to deferential review. So I will mention that at the outset. It's not entitled to a deferential review on summary judgment, if we can decide on summary judgment, right? Is this summary judgment? No, this is a 12B6. It's 12B6. Okay. Go ahead. So first, accrual occurs when the plaintiff has a complete and present cause of action and can file it to obtain relief. Here, the Appellant... We're applying the federal standards of accrual, not California standards, right? Correct. Okay. Here, the Appellant did not have evidence of the animus motivating the retaliatory acts he experienced, namely the false arrest, the surveillance. I thought we had clear case law that that doesn't matter. Whether that makes sense or not, I don't know. But under California, under federal law, my understanding is it's the injury.  And not the mens rea that goes with the injury. I would say that here, the act of fabricating these records constitutes both an injury as a separate retaliatory fact in terms of the creation of these false records that then motivated and gave the police license to then pursue various methods of harassment. And I don't even understand that because it seems to me that the false records are evidence of the retaliation. They're not the motivation itself. The motivation was apparently one means in which they carried out the motivation, right? And then they arrested him. And I don't even get the connection between that and the arrest anyway. I would say that standing alone, the creation of a criminal record attributing a misdemeanor child annoyance claim to the appellant here is itself, under Wattison v. Carter, is itself a harm that can constitute an adverse action. But if, in fact, there were false arrests and harassment resulting from these fabricated reports, all of those false arrests and harassment happened in 2008, 2009, correct? Correct. And the claim was filed when? In December 2012. So we've got to somehow get from 2008, 2009 to 2012. And what Judge Berzon is trying to have you concentrate on, if we look at Lukowski v. San Francisco, it said the claim accrues when the plaintiff knows or has reason to know of the injury, which is the basis of the action, not when the plaintiff suspects a legal wrong. It seems to me the plaintiff knew or had reason to know of these injuries when they happened. Well, to that I would say... He didn't have to know there was a legal wrong. He knew when they happened. At that point he has a duty to go forward and find out if it's a legal wrong or if it isn't, and to file a claim or not. And he doesn't file until 2012. So therefore, why is it that these are not all eliminated by the statute? While he was aware of the arrest and the surveillance and the veiled threat of further charges in 2008 and 2009, he was not aware that the police fabricated this criminal history that could then be used as probable cause to arrest him or pursue him in various ways. And as long as one independent, discreet, retaliatory act is not time-barred, the entire First Amendment claim should survive. And I would point the Court to its decision in Pouncil v. Tilton, where a Muslim inmate brought a claim that a state prison regulation prohibiting him from conjugal visits with his wife constituted a First Amendment violation of his ability to marry and father children. In that case, he had two discreet acts that he claimed violated the First Amendment. The first was in 2002, when his request to have a conjugal visit with his first wife was denied, and the second was in 2008, when his request to have a conjugal visit with his second wife was denied. The latter act fell within the statute of limitations, and the 2002 act did not. And the Court there held that because this discreet injury had taken place in 2008, the entire First Amendment claim should survive, including the 2002 denial. Okay, but here, nothing happened within the time frame. I'd say something happened. What? A criminal record was fabricated. That was not within the time frame. In other words, nothing happened within the statute of limitations period. Within the statute of limitations period, the appellant first discovered, correct, that this 2008 fourth act had occurred. Well, the one thing you said a moment ago, which was somewhat different than your briefs, seemed to be saying that the 2002, or whenever it was, fabrication, was itself the basis for a cause of action, a First Amendment cause. That's what I understood you'd be saying. I think so, Your Honor. But how can that be? I mean, maybe we would have to deal with that assertion separately. But how can that be, since if he didn't know about it, how could a reasonable person be deterred in their First Amendment rights by something they didn't know about? I think this goes to the subjective-objective issue. And this Court held in Lacey v. Maricopa County that the issue is not whether an appellant's speech was actually chilled or suppressed. No, I understand that. But nobody would be deterred by some secret act that they didn't know about. But the standard is not whether they were deterred by something they did or did not know about. The standard is whether the defendant's acts would chill a hypothetical person of ordinary firmness from further protected activity. If known. Yeah, but if known. Whether it would deter them if they were aware of the act, how could it deter them? Well, I think here, under the objective standard, the hypothetical person of ordinary firmness would be aware. Here, I think it's a subjective fact. Well, that doesn't make – I don't – I mean, it's a double try, but I don't – it doesn't make a lot of sense to me. I mean, I think the purpose of a First Amendment – I mean, the act here was doing it and concealing it, right, and doing it secretly. So the hypothetical person has to be the person affected by a secret one, not by an actual – not by a known one. But I think the purpose of a First Amendment retaliation claim is to prohibit the government from punishing individuals for protected speech. And here, I think there's an analogy to Title VII retaliation claims, where an employer can retaliate against an employee for protected speech by filing something in their record that could then, in the future, serve as grounds for a retaliatory act. And that is still retaliation. But it's different with First Amendment, isn't it, because it's chilling speech? Correct. Let me ask you, in his complaint, Mr. Whiting addresses equitable tolling and fraudulent concealment in paragraph 16. What would he say in an amended pleading on equitable tolling and fraudulent concealment if he had the opportunity to do so? I think he would – and I should clarify, I'm appointed appellate counsel, so I can't speak to what he would do on the district court level or if he had counsel at the district court level, what that counsel might do. But if you can't think up a good reason, then he won't be able to. But I think there are a couple of things he can do here. I think he can clarify the timeline for the statute of limitations issue. I think there are some complications or some disputes of fact surrounding when he actually found out. I think he might be able to, if he has knowledge of other facts, other harassment, he might be able to plead a continuing violation. I'm not sure of any further acts he might allege. Oh, I see my time has run out. Well, I'll let you go over your time with one question. I was worried that Whiting's own correspondence to the CPD demonstrated that he was or at least he should have been aware of some report or some problem because he says in his request for public record stated June 11, 2009, and I read, he says his request was the result of recent incidents, which can, which conclude an ongoing cathedral city police department retaliatory conspiracy to force Whiting, I'm just putting Whiting in there, to leave the city, to possibly influence and take the minds of future jurists who may end up hearing my civil work lawsuit and to cause me severe physical, mental, and or bodily injury. Seems to me that one statement in that June 11, 2009 letter at the very least demonstrates he should have been or he was on notice that there was a purportedly illegal arrest and surveillance. I do think the July 11, 2009 letter does not, however, contain any indication that he was aware that reports were fabricated, pinning him with this new retaliatory act. Well, he does talk about retaliatory conspiracy to force, and he does talk about the result of the recent incidents. So when I see knows or has reason to know of the injury and not the legal wrong, I'm trying to figure out how that wouldn't say. Well, I think given the confusion in the complaint and these attachments to the complaint, first and foremost, I think the court should be reviewing all of these allegations in his favor and be construing everything liberally in his favor as a pro se litigant. But again, I think the issue here is that he wasn't aware of one specific fact, which is something occurred in 2008 that in response to his protected speech that then gave the police license to falsely arrest him and harass him and surveil him. And so I think... You know, the problem is even that story doesn't make a whole lot of sense because if they wanted to falsely arrest and harass him and so on, they could do it. I mean, if they didn't... They never brought up this... When they were trying... When he was complaining about the arrest without probable cause and so on, that he had this... That they had these documents. So they weren't using it to justify what they did. They weren't using it to justify what they did. Well, how was it connected up with that harassment? If they were going to harass him without basis, which he says they did, then they don't need these pieces of paper to do it, and they didn't even rely on the pieces of paper when they did them. Well, he alleged that when they created them, they created them as liability preventers or essentially liability insurance to be able to take these acts in the future. The fact that they then... But they didn't. When it came up, they didn't. The fact that they then used other reasons that the plaintiff alleges were false doesn't detract from the fact that they were retaliated. And I have one last question, and then you are out of time, which is what is alleged in the complaint? I know he keeps saying that there was a fabrication, but what is he... I mean, in terms of Iqbal's standard, what is the allegation, plausible allegation of a fabrication in the current complaint? In paragraph 32 on ER 31, he alleges that in the day or two after his racial profiling complaint, the police created these false records, pinning him with a misdemeanor that he had no connection to. I'm confused. You're looking at paragraph 32, where he called the local CCPD, is that what you're talking about? Right, and then sort of the second actual paragraph in number 32, on or about the dates of August 8, 2008, and August 9, 2008, the defendants used fictitious statements by a nonexistent child victim and her mother to intentionally fabricate and concoct false police reports. Well, it's an allegation, but it doesn't give any basis for thinking that this report that says it's on 2006 was actually written in 2008. There's no basis for thinking that. I suppose that could be the subject of an amendment, but in this complaint, it's just an assertion. Right, so in response to that, I would say first that it is an assertion. It's a factual allegation that this Court should accept as true, and under the permissive standard for pro se pleadings and granting legal events. Well, this is a pretty good pro se pleading, actually. All right, thank you very much. Okay, thank you. Good morning, and may it please the Court. Alan Christensen for the appellees. I think that the Court is headed in the right direction. I think this is completely a statute of limitations. Well, you certainly didn't brief it that way.    Well, you certainly didn't brief it that way. There are a whole bunch of things in the brief that are totally wrong, but go ahead. Well, I think there's a couple of things that we keep in mind here, and that's that the complaint to survive dismissal has to contain enough facts to state a claim for relief that's plausible on its face. And you're not required to accept as true the allegations attached to the complaint that contradict the allegations in the complaint. And that's what the plaintiff has done here. Now, I've said in the motions to dismiss as well as in the appeal that there's always been a statute of limitations issue with regard to this false arrest claim. Plaintiffs, I think the Court is right on that. I mean, that's certainly true, but what about the First Amendment claim? Well, the First Amendment claim. I mean, you also said there was no Fourth Amendment claim, as I understand it. That's true, Your Honor, and that's because the plaintiffs in their opening brief requested that this Court construe one of the claims as a Fourth Amendment claim, which it was not in the initial pleadings. And to the extent that they want to construe that as a Fourth Amendment claim, it is well beyond the statute of limitations. I think the problem here is that regarding a First Amendment retaliation claim, it has to chill a person of ordinary firmness from engaging in protective – from continuing to engage in protected activity. In this case, the plaintiff already engaged in protected activity. His claim is that he found out later that there was this, what he calls, a criminal investigation or a criminal filing, but in reality this was just an investigation of child annoyance. So it's pure speculation that this was created in 2008. There are no factual – no facts to support that this report did not come from 2006, like it says on the report itself. And even if it did come in 2008, it still wouldn't have chilled his speech because he claims that that served as the basis for – So you're still not arguing the statute of limitations? That's – at this point I am not, but the statute of limitations is the problem. Even if this was found out in 2008, that is beyond the statute of limitations. Anything prior to December of 2010 is beyond the statute of limitations because plaintiff's complaint wasn't filed until December of 2012. Well, let me see if I can put the plaintiff's case in a way that I understand as being argued with regard to the limitations period. It's that essentially there would be an equitable estoppel because – I mean, leaving aside the accrual question, if in fact there was this fabrication and it was hidden, then it prevented him from finding out that this fabrication occurred and that the fabrication was somehow integral to the plan to retaliate. So that without knowing about the fabrication, the – he had a different – although he knew that he was harassed in 2008, he didn't know until he could find out about this fabrication that it was based on – that it would chill a person of ordinary sensitivities to have this bad report in his record. That's what I understand. But it would hinge, as I understand it, on an equitable estoppel notion that the hiding was – went over the limitations period. So what about that? It's not an accrual issue so much as an equitable estoppel issue. Well, I think even in their opening brief, the appellant says that the false arrest was the constitutional violation. There are no other constitutional violations or even possible constitutional violations alleged except that the false arrest occurred. Well, she's now saying that having this record was itself a constitutional violation because if it came out, it would have bad consequences for him down the line. Well, I think I would – I would agree that that would be a problem if it were affecting his speech later on after the fact, but it did not. That, we know, is the wrong standard. It's the wrong standard. It's not whether it affected him. All right? Well, objectively, if it would affect a person of ordinary firmness. Right. And I think the Court had it right on when it said how would it affect a person of ordinary firmness. Well, but the Court was applying the wrong standard, and you're applying the wrong standard. The right standard, the objective standard, is whether a person of ordinary firmness, knowing that the city was – had a false report that he was a child molester, if they knew – if he knew it, I mean, that may be the hole in the problem, but knew it, would be very careful because they wouldn't want to get arrested even on a false claim of child molestation. People who assert First Amendment retaliation claims ultimately are not deterred by the fear of retaliation. Isn't that virtually always the case? I don't know that that's always the case, but – Well, they've asserted a claim of retaliation, so they're obviously not that chilled. I would agree with that. Let me – I don't know whether Judge Berzon got an answer, but I would like to hear your answer to the question of if this panel were to affirm on the basis of the statute of limitations, should Mr. Whiting, given his pro se status, be granted leave to amend to either allege additional facts relative to the statute of limitations or to lay out an equitable estoppel or fraudulent concealment claim? Well, Your Honor, I don't – I don't believe he should be given leave to amend. Why not? Because he was already given leave to amend. And, in fact, he was given an opportunity when his complaint was dismissed without leave to amend, his First Amendment complaint, he was given an opportunity to explain how he would amend the complaint. Yes, but he wasn't given an opportunity to amend on limitations grounds because the district court held that he didn't have a limitations problem. So he had no reason to amend in that respect. That's true. So he was not on notice. So why not give him a chance to amend? I certainly believe – I mean, it's absolutely the case that he should be afforded – he should have notice of the statute of limitations deficiency, and he was – didn't have any notice thereof. And if he now doesn't have notice, and now we're sending it back because you went on the statute of limitations, shouldn't he have the chance to amend at least with no notice? Well, I mean – I would disagree. How do you – how do you – how do you read flowers versus First Hawaiian Bank if you don't believe that I should at least send him back with some notice? Your Honor, I don't believe that he didn't have notice of the statute of limitations issue. Well, but how did he have notice? The district court said there was no statute of limitations problem. I agree that the district court made an error in stating that because I did raise that in the motions to dismiss. But I believe that the motions to dismiss are his notice. The fact that that's not the grounds that the district court used to dismiss his complaint. I mean, to the contrary, the district court said he was fine. Why would he amend the complaint to deal with it? I mean, he didn't just say nothing about it. He said, oh, this is fine. I think what the district court said was that if it had to rule on a statute of limitations issue, it had a belief that that was a factual problem. I don't believe it was a factual problem based on the plaintiff's own allegations. But that's what the lower court said. I.e., the pleading as it stands is okay. I guess I'm worried. If I read Lucas versus the Department of Corrections, which I think is a pretty important case, 66 Fed Third 245. It says, unless it is absolutely clear that no amendment can cure the defect, a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal. I mean, that's the worry that I have, even if you win on the statute of limitations. I understand that, Your Honor. I just, I mean, I'm not talking on behalf of the appellant, so I don't know that there's any way he could amend to fix the problems that he has. I understand that. And I think that there was the issue, and you raised it, Your Honor, about the June 11, 2009 letter. And, in fact, the June 11, 2009 letter does give an indication that he was aware of the 2006 police report because he references the alias of Tim White. The only time the alias of Tim White is ever used is in that 2006 police report. Well, that's why I think the statute of limitations is a pretty good defense for you, even though the district court didn't say that. I mean, that's why I had counsel tell me about that. But, nonetheless, if a guy is in front of me and I don't tell him the statute of limitations is a problem, and now he's a pro se litigant, and now I'm going to say, yeah, it's a problem, and you're out, it seems to me, based on our case law, I should give him a chance to fix it if he can. I'm not sure he can, but at least fix it if he can. I understand your concern, Your Honor, and I would agree that if there were something that could be done to fix it, that he should be given that opportunity. I just don't see how, considering it's anything prior to 2010, would be. Okay, your time is up. Thank you very much. Thank you, Your Honor. Your Honor, I see I have one minute, so I will make this short. But to focus on two points you raised, the first is that under the doctrine of equitable estoppel, the appellees here should not be able to make the statute of limitations argument. I have a question. How did they conceal anything? In other words, my understanding is that the whole point of this record is that it was an accessible record, right? I mean, did they hide the record someplace? Or are you saying what they hid was that they fabricated it? They certainly hid that they fabricated it, but also most people don't show up at police departments asking to see. Most people don't, but people who are having a fight with the police department very well might. Right. I think regardless of whether it's available upon request, the existence of this record and the fraudulent way in which it was produced and then the way it was concealed and the way it was used as sort of liability insurance for the harassment that follows ensures that because they have engaged in all this fraudulent behavior and misrepresentation that they should not be allowed to make the statute of limitations. All right. You had a second point. What was your second point? And the second point is, as Your Honors pointed to, here the appellant did not have an opportunity in the lower court to amend. And he got incorrect instructions for amending. And under all of the case law you cited and additional cases that we've cited in our briefing, there is a well-established presumption in favor of allowing a pro se litigant to replete. I think we know that. Okay. So thank you very much. Thank you. Thank you both for your argument in Whiting v. City of Cathedral City. And we'll go to American Airlines v. Mah-Winnie. I would join Judge Berzon in her thanks to you for representing this person for the day. That is, we appreciate it very much on our court. It's a good part of our court. Thank you.
judges: Berzon, N.R. Smith, Castel